THE BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DIS-
TRICT NO. 99, Plaintiff-Appellant, v. HARTFORD ACCIDENT AND IN-
DEMNITY COMPANY, Defendant-Appellee.

Second District   No. 86—0102

Opinion filed February 23, 1987.

Heidi H. Katz, of Fawell, James & Brooks, of Naperville, and Richard A. Greig, of Concannon, Dillon & Morton, of Chicago, for appellant.

Robert Marc Chemers, Richard S. Wisner, and Michael J. Weber, all of Pretzel & Stouffer, Chartered, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, the board of education of Community High School District No. 99, appeals from the order of the circuit court of Du Page County which granted defendant's, Hartford Accident and Indemnity Company's, motion for summary judgment as to count I of plaintiff's amended complaint and dismissed count II of the amended complaint for failure to state a cause of action.

Plaintiff raises the following issues for our review: (1) whether a surety of a performance bond issued to comply with the statutory bond requirements of public works contracts can impose a two-year time limit for suit on its obligation under the bond where the applicable statute of limitations on written contracts is 10 years; and (2) whether the statutory language required to be included in every bond issued to comply with the statutory bond requirements transforms a labor-and-material payment bond guaranteeing the payment for labor and material costs into a performance bond guaranteeing the contractor's performance.

The record discloses that on June 20, 1973, Kiendl Construction Company (Kiendl) entered into a contract with plaintiff to construct both the Downers Grove North and Downers Grove South high school pool facilities. In accordance with statutory requirements pursuant to the provisions of section 1 of "An Act in relation to bonds of contractors entering into contracts for public construction" (Bond for Public Works Act) (Ill. Rev. Stat. 1973, ch. 29, par. 15), Kiendl, as principal, and defendant, as surety, executed and delivered to plaintiff both a performance bond in the amount of $1,801,261 guaranteeing Kiendl's complete performance of the construction contract and a labor-and-material payment bond in the amount of $1,801,261 guaranteeing Kiendl's payment of all subcontractors and materialmen. The work was substantially completed on August 4, 1975, as indicated by a certificate of completion issued by the architect. According to the contract, final payment came due when the certificate of completion was issued.

On April 19, 1985, plaintiff filed a two-count complaint against defendant alleging in count I that Kiendl failed to properly construct the pool facilities and that Kiendl no longer existed as a legal entity

and prayed for the damages it sustained from the improper construction of the pool facilities to be assessed from the performance bond. Plaintiff alleged in count II the same actions and injuries as in count I, but prayed to recover its damages from the labor-and-material payment bond. It later filed an amended complaint which identified in greater detail the problems with the facilities and set forth its total damages at $381,252.

Defendant filed an answer to count I and a motion to strike and dismiss count II for failure to state a cause of action because plaintiff was not the party for whose benefit the labor-and-material payment bond was obtained. It also asserted as an affirmative defense to count I that as the performance bond contained a provision which required that any suit on the performance bond must be brought within two years of the final payment, the action alleged in count I is time barred. The provision in the performance bond stated: "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the CONTRACT falls due." Defendant later filed a motion for summary judgment as to count I alleging that as this lawsuit was not filed within two years of the substantial completion of the project, as evidenced by the affidavits, certificates, and requests to admit submitted to the trial court, the cause is time barred as a matter of law.

On January 8, 1986, the trial court entered its order granting both the motion to strike and dismiss and the motion for summary judgment. In a letter of opinion, the trial court ruled that the provision was clear that an action on the performance bond must be brought within two years of the completion of the project and that the provision was not shown to be against public policy; therefore, there was no legal reason not to enforce the two-year limitation provision. The trial court also ruled that the motion to strike and dismiss must be construed as a section 2—619 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), as it raises new matters alleged to be a complete defense to the relief sought, and that the labor-and-material payment bond was not entered into on behalf of plaintiff but for the benefit of those who furnished materials and labor to the project such as materialmen and subcontractors; therefore, plaintiff had no standing to bring a cause of action on the labor-and-material payment bond. Additionally, the court found that the conditions precedent to bringing a suit on this labor-and-material payment bond were not against public policy and were not complied with by plaintiff.

■ Plaintiff's first contention is that the trial court improperly granted defendant's motion for summary judgment because a surety

cannot devise a briefer period of liability than that which is required to be fulfilled by the principal. In particular, plaintiff argues that the minimum liability of a surety on a bond given to secure the performance of a public works contract includes the statutory duty of fulfilling all the terms and conditions of the contractor's-principal's contract; that the performance bond incorporates all common law remedies available to the owner, including the right to bring a breach of written contract action within 10 years, not two years, of the completion of the contract; that defendant cannot contract for a shorter period of time allotted by a statutory limitation period where the contract involves work for a public entity as the result would be harsh and unfair; and that as the statute requires a performance bond, the acceptance of the bond is merely ministerial and any negotiations over the terms are not intended under the statute. As a result, the two-year limitation period should be held to be void and inapplicable as plaintiff had no discretion in accepting the terms of the bond, making the two-year limitation period against public policy.

It is required in Illinois that every contractor who enters into a contract with a public entity to do public construction work must furnish a bond to the public entity assuring that the work will be completed and all obligations will be fulfilled. (Ill. Rev. Stat. 1973, ch. 29, par. 15.) In addition, section 1 of the Bond for Public Works Act also requires that the following language be incorporated into every bond secured for public construction work whether the provisions are inserted in such bond or not:

" 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' " (Ill. Rev. Stat. 1973, ch. 29, par. 15.)

While the performance bond at issue here could be interpreted as providing security to plaintiff, the contracting public entity, from loss

caused by defaults only in the performance and completion of the contract by the contractor, it is clear that the language of section 1 of the Bond for Public Works Act imposes a statutory obligation on a surety of a construction bond to insure or guarantee that all the terms, conditions, covenants, undertakings, and agreements of the construction contract will be performed and completed and to satisfy all just claims due under the construction contract. (Ill. Rev Stat. 1973, ch. 29, par. 15.) In essence, the law requires that all the obligations placed on the contractor by the terms of the contract must be undertaken and completed by the surety of the bond in the event that the contractor cannot or does not complete its obligations under the contract. *Cf. People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 264, 500 N.E.2d 34.

■ An examination of the construction contract in this case reveals that the relevant duty on Kiendl expressed under the terms of the construction contract was to correct any work found to be defective and not in accordance with the contract within one year of the substantial completion date. Thus, under the statutory language of section 1 of the Bond for Public Works Act, defendant was also responsible for the correction of any work found to be defective for a period of one year if Kiendl was unable to complete this duty. As there was no other contractual provision providing some type of warranty or guarantee of the construction work, the one-year period to correct any defective work was the only relevant contractual obligation undertaken by Kiendl and transferred to defendant by the statutory language.

Additionally, there was no contractual provision providing a time limit for the commencement of a suit under any of the provisions of this contract. Therefore, the time in which a suit may be commenced on the contract is governed by statute. The applicable statutory limitation period for the commencement of a suit on a construction contract, however, is not a provision incorporated into the contract because a limitation period does not create liability for a particular party under a contract, but, instead, is a legislative creation fixing the time within which a party may seek a remedy for the failure to perform certain activities under the contract. See *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 209, 486 N.E.2d 893.

Claims against Kiendl, as a contractor, must be brought within the four-year limitation period provided for in section 13—214(a) of the Code of Civil Procedure, which limits actions against a contractor for acts or omissions in constructing improvements on real property.

(See Ill. Rev. Stat. 1985, ch. 110, par. 13—214(a).) While Kiendl's liability stems from its failure to properly complete the work, the claims against defendant are grounded on its obligation under the statutory bond, thereby precluding the application of the protections afforded by section 13—214(a) as the issuance of a performance bond has been found not to be within the statute's protection. (*People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 264, 500 N.E.2d 34.) Performance bonds are considered written contracts and are subject to the 10-year statute-of-limitations period provided for in the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—206). (114 Ill. 2d 252, 264, 500 N.E.2d 34.) Therefore, defendants would remain obligated under the performance bond for Kiendl's failure to complete terms, conditions, covenants, undertakings, and agreements of the construction contract for 10 years even though Kiendl's liability would cease after four years under the current statute.

■ The performance bond here, however, contains a clear and unambiguous provision limiting the time in which a party may file an action on the bond to two years. Generally, it has been held in other jurisdictions that, as between private parties, in the absence of any prohibitory statute, the time within which a suit may be brought upon a bond may be limited by a contractual provision in the bond. See *Con-Plex, Division of U.S. Industries, Inc. v. Vicon, Inc.* (La. Ct. App. 1984), 448 So. 2d 191 (which found a provision limiting the time to bring suit under a surety bond to two years to be enforceable); *Timberline Electric Supply Corp. v. Insurance Co. of North America* (1979), 72 A.D.2d 905, 421 N.Y.S.2d 987, *aff'd* (1980), 52 N.Y.2d 793, 436 N.Y.S.2d 707 (involving a surety contract where the court found that although the period of limitation was set by statute, the parties may shorten it in their written agreement); *Quin Blair Enterprises, Inc. v. Julien Construction Co.* (Wyo. 1979), 597 P.2d 945 (provisions which limit the time within which actions may be brought on building contract bonds are valid and will be enforced if reasonable); *Camelot Excavating Co. v. St. Paul Fire & Marine Insurance Co.* (1979), 89 Mich. App. 219, 280 N.W.2d 491 (bond clearly provided that all suits must be brought within one year of date on which principal ceases work and there was no controlling State law which prohibited such limitation); *Rumsey Electric Co. v. University of Delaware* (Del. 1976), 358 A.2d 712 (in the absence of an express statutory provision to the contrary, a statute of limitations does not prohibit the imposition of a shorter limitation period by contract); *Sam Finley, Inc. v. Interstate Fire Insurance Co.* (1975), 135 Ga. App. 14, 217 S.E.2d

358 (bond prohibiting commencement of a lawsuit on bond after one year following completion of work was not void on grounds of public policy); see also Annot., *Validity of Contractual Time Period, Shorter than the Statute of Limitations, for Bringing Actions* 6 A.L.R.3d 1197 (1966) (wherein section 5 specifically examined the issue in relation to bonds); 12 Am. Jur. 2d *Bonds* sec. 37 (1964) (in the absence of a prohibitory statute, time within which a suit may be brought may be limited by a contractual provision); 51 Am. Jur. 2d *Limitations of Actions* secs. 64, 66 (1970) (contractual limitation provisions relieving parties of time obligations imposed under general statute of limitation had been applied to bonds); 53 C.J.S. *Limitations of Actions* sec. 26 (1948) (subject to some exceptions, parties may agree to shorten period of limitations prescribed by statute); *contra, City of Weippe v. Yarno* (1971), 94 Idaho 257, 486 P.2d 268 (established in Idaho law that statute of limitations may not be contractually shortened).

Similarly, contractual provisions shortening the period of time in which an action may be brought upon a bond to secure public as well as private construction contracts have been upheld to the extent that the period fixed is a reasonable one. (See 17 Am. Jur. 2d *Contractor's Bonds* sec. 124 (1964); *City of Hot Springs v. National Surety Co.* (1975), 258 Ark. 1009, 531 S.W.2d 8; *Independent Consolidated School District No. 24 v. Carlstrom* (1967), 277 Minn. 117, 151 N.W.2d 784.) While one of the purposes for requiring a bond in public works contracts is to protect the tax money allotted to public works (see *Housing Authority v. Holtzman* (1970), 120 Ill. App. 2d 226, 241, 256 N.E.2d 873), the purpose is not defeated by upholding the two-year limitation period provided for in the performance bond. The two-year limitation period is not contrary to any of the provisions of the contract and does not limit defendant's liability under the bond or under section 1 of the Bond for Public Works Act (Ill. Rev. Stat. 1973, ch. 29, par. 15). It simply limits the time within which an action on the bond may be brought.

Plaintiff does not argue that a two-year period in which a party is required to bring an action on a bond is unreasonable, and it does not appear to us to be an unreasonable length of time. The limitation period which would have been applicable to Kiendl, as the contractor, for actions brought under the construction contract, although currently four years from the time a person knew or should have known of an act or omission (Ill. Rev. Stat. 1985, ch. 110, par. 13—214(a)), was only two years at the time the construction contract was entered. Additionally, section 2 of the Bond for Public Works Act provides that actions on bonds brought by materialmen or subcontractors for pay-

ment for furnishing materials or services must be brought within six months of the completion of the work. (Ill. Rev. Stat. 1985, ch. 29, par. 16.) The two-year time limit in the performance bond is not contrary to the provisions of the Bond for Public Works Act, and we believe that, as demonstrated in other cases, the parties were free to contract for a time period within which a suit may be brought on the performance bond which was less than the general statute-of-limitation period applicable to written contracts. See *Lesher v. United States Fidelity & Guaranty Co.* (1909), 239 Ill. 502, 511, 88 N.E. 208 (recognizing that parties to a contract may fix a period of time for bringing a suit on a surety bond which is different from the general statute of limitations); *American Terra Cotta & Ceramic Co. v. Bankers Surety Co.* (1916), 199 Ill. App. 545, 548-50 (upholding a six-month limitation of time for a claim under a performance bond involving the delivery of floor tile); *Western Tube Co. v. Aetna Indemnity Co.* (1913), 181 Ill. App. 592, 595-96 (recognizing that a time limitation on a suit under a bond is as valid); see also *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 303, 393 N.E.2d 1223 (a contractual limitation requiring a suit to be brought within a specific period of time in contracts for insurance has been held valid if reasonable even where the period provided by a general statute of limitations as to suits on written contracts is longer); Ill. Rev. Stat. 1985, ch. 26, par. 2—725(1) (which provides that parties may reduce the statutory four-year limitation period to not less than one year in contracts involving the sale of goods).

As this action was not brought within two years of the completion of the work, there is no material issue of fact presented, and the trial court properly granted summary judgment for defendant on count I as being time barred.

■ Plaintiff's second contention is that the trial court improperly dismissed count II of its amended complaint. Plaintiff maintains that count II sufficiently stated a cause of action against defendant under the labor-and-material payment bond. It argues that the statutory language of section 1 of the Bond for Public Works Act (Ill. Rev. Stat. 1973, ch. 29, par. 15) required to be incorporated in each bond converted this bond into an additional performance guarantee of Kiendl's proper completion of the project by defendant. Plaintiff asserts that because of this language, the labor-and-material payment bond was, in essence, for the benefit of plaintiff.

While not a named party to the labor-and-material payment bond, plaintiff may maintain a cause of action as a third-party beneficiary to this contract if the execution of the bond was intended to directly con-

fer a benefit on plaintiff. (*Bates & Rogers Construction Co. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 232, 486 N.E.2d 902; *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 386, 400 N.E.2d 918; *Wilde v. First Federal Savings & Loan Association* (1985), 134 Ill. App. 3d 722, 731, 480 N.E.2d 1236.) This intent, however, must be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. (*Bates & Rogers Construction Co. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 232, 486 N.E.2d 902.) The intent to benefit must be directly indicated (see *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 556), and it is not enough that the benefit was incidental. See *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 384-86, 400 N.E.2d 918.

An examination of the labor-and-material payment bond indicates that it was executed for the benefit of anyone providing materials and/or labor required to be used in the completion of the project. The bond defined a claimant as:

> "one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the CONTRACT."

While plaintiff may have incidentally benefited from the existence of this bond as it probably prevented liens from being filed against the property and the project, the above definition clearly demonstrates that it was not entered into to guarantee Kiendl's performance as this performance was already guaranteed by the performance bond. Sections 1 and 2 of the Bond for Public Works Act (Ill. Rev. Stat. 1973, ch. 29, pars. 15, 16) provide an alternate remedy for subcontractors and materialmen to that afforded by "An Act relating to contractors' and materialmen's liens, known as mechanics' liens" (Mechanics Lien Act) (Ill. Rev. Stat. 1985, ch. 82, par. 23), as their purpose is to protect subcontractors and materialmen for whom no right of mechanic's lien exists against a public body, as well as to regulate claims against public monies. (*City of Chicago ex rel. Charles Equipment Co. v. United States Fidelity & Guaranty Co.* (1986), 142 Ill. App. 3d 621, 628, 491 N.E.2d 1269). Plaintiff is unable to support with any case authority its claim that the statutory language required to be incorporated in each bond converted a payment guarantee into a performance guarantee, and there is no justification to apply the language to

carry out such a conversion where a performance bond was specifically executed for plaintiff's protection. As the labor-and-material payment bond was not executed for plaintiff's benefit, plaintiff's cause of action on this bond was properly dismissed for failure to state a cause of action.

For the foregoing reasons, the order of the circuit court of Du Page County granting summary judgment as to count I of plaintiff's amended complaint and dismissing count II of plaintiff's amended complaint is affirmed.

Affirmed.

WOODWARD and DUNN, JJ., concur.