SUPPLE v. WHEELER.

BARLEY v. SAME.

1. FRAUDS, STATUTE OF—SALE OF REAL ESTATE—DEED IN ESCROW.
   Under 3 Comp. Laws 1915, § 11977, requiring contracts for the sale of lands to be in writing, a deed delivered in escrow is sufficient to meet the provisions of the statute.

2. ESCROWS—DEEDS—DELIVERY—EVIDENCE—SUFFICIENCY.
   Evidence that a deed to land was prepared, signed, and delivered to grantors' attorney to await final action by the parties in completing the transaction, held, insufficient to show a delivery in escrow.

Appeal from Kalamazoo; Collingwood (Charles B.), J., presiding. Submitted April 23, 1920. (Docket No. 88.) Decided June 7, 1920.

Bill by Frances H. Supple against Kate Henderson Wheeler and others for the cancellation of a deed. Albert C. Barley was permitted to intervene and file a bill claiming under a prior deed which had been destroyed. From a decree dismissing the bills, plaintiff Barley appeals. Affirmed.

*Thomas J. Cavanaugh,* for plaintiff Barley.

*Alfred J. Mills,* for defendant Wheeler.

*Mason & Sharpe,* for other defendants.

MOORE, C. J. In April, 1919, Frances H. Supple and Kate Henderson Wheeler owned lots 5 and 6 of the revised plat of the Henderson plat in the city of Kalamazoo. Frances H. Supple owned a three-fifths interest. Kate Henderson Wheeler owned a two-fifths interest. The property came to them partly by inheritance, and partly by purchase of the interest of other heirs. It was heavily mortgaged and there were

Authorities discussing the question of delivery of deed in escrow as satisfying the statute of frauds are collated in a note in 43 L. R. A. (N. S.) 390.

outstanding taxes and tax titles against it. They desired to sell the property and listed it with Sanford A. Wiltsey, a real estate agent doing business at the city of Kalamazoo, but did not give him written authority to sell. In the latter part of April, 1919, the property was supposed to be sold to Albert C. Barley for the consideration named of $15,000. A deed was made in which Mr. Barley was named as grantee. This deed was delivered to Clare H. Stearns to be by him delivered if conditions arose about which the parties are not agreed. Harry C. Howard represented Mr. Barley in the transaction. The abstract of title was procured, re-certified and delivered to Mr. Howard. It showed delinquent taxes and a mortgage concerning which there were negotiations. The deed was submitted to Mr. Howard and he reported to Mr. Stearns that it was all right and that there remained only the mortgage and the taxes to take care of.

On May 5, 1919, the deed to Mr. Barley was destroyed and one was made to the defendant Hopper who was to pay a mortgage of $7,500 which was upon the property and the unpaid installments of a paving tax, and other considerations, so that Mrs. Supple and Mrs. Wheeler would realize about $1,200 more than would be realized from Mr. Barley. Later Mrs. Supple filed this bill in the circuit court, in chancery, praying, among other things, that the Hopper deed might be recalled. Mr. Hopper and his wife answered this bill of complaint alleging, among other things, that they were purchasers in good faith for a valuable consideration and asserting that the plaintiff had no equitable grounds for relief. Albert C. Barley filed a petition accompanied by a bill of complaint praying for leave to intervene, which was granted. Mr. and Mrs. Hopper answered this bill of complaint as did Mrs. Wheeler. The issues came to a hearing in open court. The circuit judge at the close of the testimony expressed himself in part as follows:

"There was no written contract. There was no payment. The question simply is this: When this deed was delivered to Mr. Stearns, what was the intention of the parties? It may not be said that there was a substantial agreement in the evidence, not in the testimony but in the competent, material evidence and it is the finding of this court that at the time the deed was made there was no meeting of the minds of the parties. That the deed was placed with Mr. Stearns to be delivered to Mr. Barley if certain conditions were complied with; that either party or either of the parties had a right to withdraw; that Mr. Barley could have withdrawn; that Mrs. Supple or Mrs. Wheeler could have withdrawn. They chose to withdraw and destroy the deed."

He dismissed both bills of complaint. It is from this decree that this appeal is taken.

Counsel are agreed that "the only question involved is whether the delivery of the Barley deed to Attorney Stearns under the circumstances is to be regarded as delivery in escrow." It is the claim of the appellant that a complete agreement had been reached between the grantors and the grantee named in the Barley deed, that it had been delivered to Mr. Stearns in escrow to be delivered to Mr. Barley when he did certain things which had been agreed upon and which he was able, willing and ready to do. The appellees insist that no delivery in escrow was proven because of two important elements of fact which were established by the proofs, namely:

1. The deed in question remained in the possession and under the control of the grantors, Mrs. Supple and Mrs. Wheeler.

2. No actual agreement of sale on the one hand and of purchase on the other had been made between the parties to the Barley deed.

The appellant's contention is stated in the brief of counsel as follows:

"In any event it must clearly appear from the facts

and circumstances that a deed was made conveying the property to Barley; that it was delivered to Stearns in escrow to be delivered to Barley when he paid the $15,000; that Mr. Barley was ready, willing and offered to pay the $15,000 as soon as the abstract was re-certified and the title passed and the deed examined by his attorney; that there were no delays and that on the 5th at eleven o'clock, the time agreed, nothing remained to be done but deliver the deed and receive the money. Under these facts, What is the legal situation?"

Appellees insist these facts and circumstances were not proven, while it is insisted by appellant that they were.

Counsel for appellant and appellees call attention to section 11977, 3 Compiled Laws 1915, which reads:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfull authorized by writing,"

—and are agreed that if the delivery to Mr. Stearns was a delivery in escrow then the provisions of this statute have been met. They also cite the case of *Thatcher* v. *St. Andrews Church*, 37 Mich. 264, quoting therefrom at some length.

The law in relation to deeds delivered in escrow is not a new subject in this State; some of the cases are *Thatcher* v. *St. Andrews Church, supra; Stevens* v. *Castel,* 63 Mich. 117; *Roup* v. *Roup,* 136 Mich. 385; *Wisconsin, etc., R. Co.* v. *McKenna,* 139 Mich. 43; *Miller* v. *Beardslee,* 175 Mich. 414; *Loomis* v. *Loomis,* 178 Mich. 221.

The decisive questions are questions of fact. Testimony was taken at great length and there is some conflict in it. Did the minds of Mrs. Supple, Mrs. Wheeler

and Mr. Barley meet in relation to just how much the grantors were to realize out of the transaction? At first it was expected that Mr. Barley would make a small payment down and in 90 days would close the deal. Mr. Stearns advised against that being done on account of the pressing need to take care of the taxes. Mr. Barley then proposed if he paid cash that he ought to have interest which would be evidenced by a discount credit. There was also to be deducted from the $15,000 which he was to pay all taxes and tax liens. A table was prepared known as Exhibit 6 which was headed "List of Taxes," containing 15 items aggregating $4,329.81. This was submitted to Mr. Howard and he in turn submitted it to his client, Mr. Barley, who added to it the following "city taxes due July $212.50 (estimated) ...... $212.50." With this addition the paper was returned to Mr. Howard and by him handed over to Mr. Stearns. The record is persuasive that as to these two items no agreement was reached and the minds of the parties never met. The amounts are not large but if allowed to Mr. Barley they would be deducted from the $15,000 which he was to pay and would diminish to that extent the amount the grantors would receive.

A pertinent inquiry is, What was the relation of Mr. Stearns to the parties? It is claimed he was selected as a third party to whom the deed was delivered in escrow. The testimony is overwhelming that Mr. Howard was acting as the attorney for Mr. Barley and Mr. Stearns was acting in a like capacity for Mrs. Supple and Mrs. Wheeler. The deed to Mr. Barley was prepared under the direction of Mr. Stearns, it was taken to Mrs. Supple by his stenographer and executed before him and witnessed by him and another employee in the office of Mr. Stearns. It was returned to Mr. Stearns and after it was signed by Mrs. Wheeler was retained by Mr. Stearns. In a

printed record of 170 pages no witness testifies that the deed was delivered to Mr. Stearns in escrow. It undoubtedly was prepared in the expectation that on Monday the 5th of May at 11 o'clock, the parties would all get together in either Mr. Howard's office or Mr. Stearns' office and agree upon all details and complete the transaction. The deed, however, from the time it was made remained in the possession of the agent and attorney of the grantors until it was destroyed. It had not been delivered beyond the recall of the grantors. Mr. Barley had made no payment nor had he signed any writing in which he agreed to do anything. On the 4th day of May Mrs. Wheeler and Mr. Hopper reached an agreement. Monday morning Mrs. Wheeler telephoned Mr. Stearns that the Barley deed must not be delivered; that Mr. Hopper had agreed to purchase the property and would call at Mr. Stearns' office in a short time. Mr. Hopper did so. The deed was made and the Barley deed was destroyed. In Mr. Stearns' testimony appears the following:

"Referring to the conversation with Hopper on his first visit to my office, Hopper said he understood a deed had been made to Mr. Barley. I told him that was true but it had not been delivered, that the parties were to meet at 11 o'clock that morning to close the deal if they could get together, that up to that time the minds of the parties had not met on their transactions, that nothing had been paid to bind the bargain and that there had been nothing in writing up to that time—it was a tentative agreement and I saw no reason why Mr. Hopper could not carry through his deal as he had made it."

We think the appellant has failed to show the delivery of a deed in escrow.

The decree is affirmed, with costs to the appellees.

STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred. SHARPE, J., did not sit.